the case of Fuller v. Carollo good morning may it please the court my name is Elliot Kula with me is my partner William Mueller and we represent the appellant Joe Carollo the principal issue on appeal concerns the district court's failures to adequately address the undisputed and improper conduct with the juror and I want to focus on three undisputed facts the first fact is that it's a plaintiff's a plaintiff's affiliate and a twenty percent stakeholder in the litigation in the outcome of the litigation who followed a juror into an elevator stood behind her and said quote I'm following you quote be careful because former police chief came to testify and he was followed and then he urged her to look all this up on social media fact number one fact number two the juror shared this encounter with six other jurors and they convinced her to bring it to the court's attention fact number three the judge questioned the jurors confirmed both fact number one and fact number two but did not question the plaintiff's affiliate and based on that constrained only by his interview of the jurors determined that he would neither grant a mistrial nor excuse I'm sorry to interrupt did the judge confirm that it was actually the associate it was undisputed the judge confirmed that with counsel it's undisputed there's a video and I know about the video it's undisputed that this was an affiliate it's undisputed that this person Zach Bush held a 20 percent stakeholder in the outcome of the litigation keeping in mind that there were several related litigations which that had come out as well and let me just take you let me just take you right to the end here why wouldn't this be harmless error given that the judge called each one of the jurors in questioned them about this incident they all assured him that they could be fair and they wouldn't consider this whatever and then he also on top of that instructed them and he made a factual finding that they would all be fair and that they wouldn't consider this why wouldn't this be harmless error even if it's an error first of all that the jurors have stated that they could continue to be impartial is not dispositive that the case was clear we cited the case in our brief it's the case that may be adequate if the judge had done a full 360 degree inquiry which meant that he had also examined this 20 percent stakeholder the perpetrator so why is that relevant why is Mr. Bush's testimony relevant if what we're looking at as far as prejudice our prejudice inquiry means a determination whether the jury was affected it seems to me and in fact Mr. Carlo's counsel commended the judge for his investigation and said it was remarkably thorough and so why is it not enough that the the judge called in the affected juror and then all the other jurors when we're dealing with a situation where we have a juror reaching outside beyond their confines then the jury and those jurors represents the entirety of the analysis this 360 degree inquiry but where we have an outside influence a stakeholder in the litigation and we don't examine those circumstances we don't examine the motivation the intentionality how long was this person trailing the juror what was he thinking what was the substance of the conversation how does that affect whether or not the jury was able to set this aside I mean that might that might very well be a cause for some other action on the part of the court perhaps with respect to the stakeholder but how does it show us or reflect upon the impartiality or the partiality of the jury I think that we also have to recognize that there's this presumption of prejudice that we briefed in in on appeal there's a presumption that there's prejudice and there needs to be a rebuttal of that presumption there's a presumption of prejudice when there is extraneous contact with the juror which I think we have but it has to be contact about a matter pending before the jury they had a brief encounter in an elevator it wasn't about the lawsuit so why does the presumption attach I would submit that it was about the lawsuit and that's why we what if the juror didn't seem to perceive it as such isn't that the inquiry that matters well not if we're not studying the full circumstances I guess we're trying to you seem to quarrel with the judge for not having called Mr. Bush the judge called the juror number three and that's where Corolla's counsel complimented the district court saying I've done lots of these inquiries before the way you handled it is exactly the way I would have expected you to do I think doing that with all the jurors would be very appropriate the district court then questions all of the jurors one by one and then Corolla's counsel again compliments the district court we appreciate the detail of your honor's inquiry but any curative instruction would have to make clear to the jury that this indictment has nothing to do with the case the incident has nothing to do with the case and then the district court gives a curative instruction so it seems like the only thing that you're questioning is the lack of calling Mr. Bush correct that's not the only thing but it's an essential it's an essential element of the court's inquiry without that it's not a fulsome inquiry and it's not an informed judgment but if we look at the curative instruction as well I'm sorry to interrupt you keep saying that without calling Mr. Bush it's not a complete inquiry and it can't it can't be upheld but I think we've agreed that the question is whether this affected the  whether there was bias on the part of the jury as a result of this or some unfairness on the part of the jury and what where my disconnect is and maybe you can help me understand is how or why calling Mr. Bush for whatever other reason there might have been for calling him would affect whether or not there is an effect on the jury you see what I'm saying I do your honor and let me try it this way which is that with that information about the perpetrator again we're not talking about a jury reaching out we're talking about a perpetrator reaching in without that information we cannot adequately evaluate the jurors own testimony that they would be impartial but but why well the Kanani case explains in the Kanani case explains that that is not the be-all and end-all certainly not where there's been an outside influence and for that reason I understand that you're saying that and I'm asking you this because I want to make sure I'm giving your argument fair consideration and it's just in my mind I'm not understanding why whatever the motivation of Mr. Bush may have been has any bearing whatsoever on whether or not the jury wound up being prejudiced by this and and so I want to make sure I've given you every opportunity to explain what I am not understanding and it our position is that without understanding what Zach Bush did those full circumstances we cannot truly understand when the juror says they were not biased from keep in mind that the communication from Mr. Bush was about this case this case is about harassing and and pursuing and he harasses and pursues he talks to the wit to the juror in the elevator about a witness in this case that he suggests is being followed and then he also urges the the juror to consult the social media that sort of conduct infiltrating the jury should not have gone without examination by the judge and then we look at the curative instruction which is also problematic because the curative instruction only exacerbated the situation the curative instruction allowed the perception to remain that perhaps this was someone on the plate on the defendant's side when in fact it was not actually didn't the curative instruction say that the party was not associated with either party yes which is not accurate that's not an accurate representation by the district court to this jury so therefore how does it bias your client though by making I mean your argument is that the jury then thought that that Mr. Bush was acting on behalf of Mr. Carollo and and if the court instructed the jury Mr. Bush is not associated with either party and on top of that the jury had previously seen the video where Mr. Bush was associated with the plaintiffs how does that I'm just not getting how that prejudices your client it prejudices the client because it leaves in place this this misapprehension it is not that it is a representative of neither party it is a representative of the plaintiff's party and to allow the perception to be remain that it is perhaps a person not associated with anybody is an incorrect representation and an incorrect perception to leave with the judge so we have the problem with the inquiry we have the problem with the curative instruction we have the problem with the unanswered questions as to what was going on in that elevator and for those reasons we request that court reverse remand for a new trial you're about to shift and I'm going to ask you a preliminary question before as part of your shift you're about to talk about um some of your uh post judgment motions related to the first amendment issues and the remediator regarding damages in your notice of appeal you dropped a footnote to say that if and when the district court denied your post trial motions you wanted to appeal the denial of those motions as well do you think that footnote's enough to give us jurisdiction over your appeal from the denial of those motions you didn't amend the notice of appeal we did not amend the notice of appeal do we have jurisdiction to hear those other two issues we do to the extent that we've made the extent of our arguments in the brief and so these had not been ruled on when you filed your notice of appeal so what i'm trying to get at is you didn't file an amended notice of appeal so do we have jurisdiction over those two issues jurisdiction over the two issues to the extent they're argued in the briefs but we didn't argue about the errors at the in the post trial motions we're focusing on the errors of trial and i want to focus on the color of law argument most importantly because i think it's very clear in this case that that the defendant was not acting under color of law we understand from this court's decision in walker and butler that color of law requires a showing that acts were made possible only because the defendant was closed with authority of state law and we understand from the litigate decision out of the u.s supreme court which makes it even clearer that the presence of state authority must be present and real in this case and i see i'm coming up on the end of my time but in this case there is no authority in fact the code the charter actually prevents mr corio from engaging in the precise activity that was the underlying claim so there is no color of law the probable cause was never even instructed we know it's an element of the 1983 case there was no even instruction on that and they were relieved from the burden for these reasons we expectfully request that the court reverse and remand for a new trial in front of a new judge and in the alternative remand for judgment in mr corio's favor thank you all right thank you mr cool and you have reserved three minutes and we'll now hear from counsel for the appleys counsel before you get started on the juror misconduct issue um i know you didn't mention it in your brief do you have an opinion as to whether or not we have jurisdiction over the first amendment issues the post-trial motions yes your honor i i believe you don't have jurisdiction an amended appeal should have been filed going back six years uh seven years six seven years uh we had filed an initial appeal and then filed an amended complaint and then because we had filed an amended complaint there was no jurisdiction over our appeal and it was dismissed and then we had to file again so i think the same principle applies here uh but good morning uh jeff gutters from access law group for the plaintiffs and appellees and i i think i need to start by saying that any incident with a juror of the nature we have is inconsequential in light of the avalanche of evidence against commissioner carollo and the court's inquiries were very present and took away a lot of the points i wanted to make but i do want to point out that the defendant submitted the video of this encounter in under seal and as part of the record at de 481 and i encourage the court to watch it because you will see the juror enter the elevator lobby area and stand there for a full minute and there's a little timer on there so you can see the full minute it starts at uh 238 37 and she stands there till 239 48 and then a gentleman walks in and he stands there for another full minute and there's no conversation he stands there next to her looking at his watch then he turns around to look at a mirror or a poster on the wall and there's absolutely no conversation and then they both enter the elevator she presses floor five and he doesn't press anything but in fairness i mean come on what was mr bush doing there i mean what was he doing interacting with her and making those kinds of comments well we don't know we don't know that he even knew who she was and let me point this out the juror in her testimony says that the gentleman responded in a funny manner with laughter he said i'm following you which makes sense because she pressed five and said where you're going and so he's i'm following and then when she didn't really get the joke he explained and he didn't say in the case against coroy or anything he just said in a case and then she said that his comment was if he didn't know that i was a juror right well she also said he was in the courtroom and you know she was sitting in the jury box so yes i mean is that smell a bit and i i read a lot of news articles in the morning and one i recently read was about a gentleman in his 80s giving life lessons and he said don't think that everybody's thinking about you all the time because they're not and somebody in the back of the courtroom watching a trial and there were dozens of people every day honestly not looking sort of the juror is it seems to defy reality to suggest that a twenty percent stakeholder who is going to the trial and watching it wouldn't know that who the jurors were i mean you know he's got money at stake he's sitting in the courtroom so he's spending his time there he can see the jurors they're not that far away i mean it just kind of defies reality in my mind to suggest he doesn't know who she is and and we don't know that but what we do know is what the juror number three testified to that he said it in a joking manner he laughed then he explained the joke and then and then that was it and she said he said it as if he didn't know who i was so that was that was her impression but the court's other point is is is correct too it didn't talk about mr carollo it didn't say his name it didn't talk about mr fuller mr pedina no reference to the names no reference to the case no reference to anything at issue in the trial the you know it was big news in the media because the police chief did file a police report and it did come out that the investigators were hired by the city and it was all over the place and so for something like this to come out a few days later um it's not terribly surprising right because it was big news did this would did we wish this gentleman did not say this of course you know everybody was like what the heck happened you know and we don't look when i look at the video it looks like mr bush i i have not disputed it i don't know there's no evidence it looks like him um but there's no evidence other than that but we haven't disputed that we we think it probably was him he never came back to the trial and the judge and i was standing there at sidebar with the judge as he called juror number three and and mr cooney and i and and the judge interviewed her and and as the judge said repeatedly i looked her in the eye and i believe her she was not rattled she was not afraid she was not shaken she she thought it was odd she didn't even think it was worth reporting until another told her she probably report it which we're glad they did and and she said absolutely i can be fair and absolutely this does not have any impact and then the judge brought in all of the jurors and asked them all the same thing and they all agreed this this had no impact that they heard that maybe somebody said something had no impact whatsoever on them and at the time you know we we did have two alternate jurors throughout the trial and and mr corolla's counsel never made any kind of motion to strike this juror so they they waived that and allowed her to stay on the trial so um and let me just you know the the 11th circuit standard is clearly the judge smith has a large discretion in this area and the uh one one of the key factors is looking at you know the the the strength of the evidence right and and i'd like to just point this out to the court i'm sure you've read judge smith's order uh uh de631 on the motion for new trial but but this is a a united states district judge who who wrote after hearing 24 days of evidence 24 days of trial judge smith held that joe corolla quote used his position and power to weaponize city government against plaintiffs because plaintiffs chose to exercise their first amendment rights by supporting defendant's political opponent he said that this weaponization continued long after the plaintiffs had filed suit actually five years for five years after and he said that during that time the weaponization was continuous and unrelenting and that's a quote and then he says and it quotes specifically targeted sorry specifically targeted plaintiffs financial vulnerabilities by attempting to shut down their or their tenants business he called this intentional and malicious reprehensible and a shock to the conscience and that's a united states district judge who sat through the whole trial and i wondered where he came up with that word weapon weaponized right because i i come up with that no you know who first said it it was the city manager the ceo of the city of miami who said that corolla was seeking to weaponize government to shut down to close mr fuller's properties that was echoed by the director of code enforcement who said corolla was sending people out to find code violations to shut down the properties and george kalina the chief of police in 2019 wrote a letter saying that corolla was targeting businesses to cause harm to fuller and there was unsanctioned and unlawful and then that was just 2019 in 2020 a new city manager appeared and held a meeting a lengthy meeting with the building department the code department the entire city attorney's office focused on finding ways to shut down fuller's properties the next day they started circulating lists weekly lists of fuller properties trying to impose code violations within six months they shut down the ball and chain restaurant in cayocho and then they shut down the taquerias and los altos restaurant and that was 2021 and 2022 in 2021 we got a new police chief art acevedo and when he came into town on easter weekend the police officers who picked him up drove him to a spot in cayocho at 12 30 in the morning and he found the city manager art noriega there watching a raid with like people in bulletproof vests guns helmets more than 12 officers raiding this taquerias or los altos location on easter sunday for what reason to check for a permit right and this happened dozens of times sometimes twice in a night they would enter these establishments in full armor simply to terrorize mr fuller and that was it all then they this list of properties ended up with their effort to demolish six buildings they actually demolished one which was the oldest home in miami that they had restored and then the third dca and joined that criticizing the city harshly for trying to do this and that wasn't all he went on the radio repeatedly for years and called mr fuller a corrupt mafioso a godfather taking money from the venezuelan government which is of course the worst thing you can say in in cuban uh central miami that that hates the communists and that wasn't all he then went and told people not to do business with mr fuller and mr pinea they lost their tenants they lost their bank financing they lost the law firms greenberg troy fired them as a client because they were afraid of joe carollo and the smithsonian institute that had committed to open up a museum on cuban american history pulled out because of this harassment from joe carollo so the evidence over 24 days from the city's most senior witnesses and i didn't even mention carollo's chief of staff richard bloom who was also a former police chief of durell who testified that he quit because carollo was making him just research fuller properties and then mr moreau who was the aide who actually carried out the weaponization when he first started he was the one who found the rallies in the fuller properties and he called fuller and said what are you doing and fuller said i don't know it's not me and they went back the next day and he found mr pinea there and he says you're lying to me it's you guys supporting these rallies he told carollo that and at the night of the election when mr fuller voted and mr carollo said where's your alfie leone pin fuller called him to congratulate him and mr moreau said it's fuller on the phone he wants to congratulate you and carollo said f you and f him and then he went and reported fuller for voter fraud without basis reported them for money laundering without basis started the the the list of properties i mean the evidence was an absolute avalanche it was horrifying um with respect to the issue of under color of law the defendants did not even raise that in their post-trial motions so that is waived um completely waived but the in one prior oral argument chief judge prior uh commented that this case was very much like bennett v hendrix and if you look at bennett v hendrix 11th circuit 2005 it goes into allegations just like this of prolonging an organized campaign of harassment by government officials um and then there's hillside productions uh i know this court i know judges on this court have written about color of in the in the criminal context so i don't i think that's waived and i think he obviously was operating under color of law um he always pleaded in this case throughout that he was uh just doing his official duties that would that was his position throughout the trial so not only did he waive it he had a completely contrary position and he's filed a lawsuit against qb under the law enforcement policy saying that not only was he acting under color of law it was in his law enforcement capacity um and the and the last thing i want to say is that there's obviously uh no requirement uh to plead or prove probable cause uh judge smith followed this court's own standard jury instructions which don't have that requirement and there's no case that holds that that's a requirement outside of the context of of criminal law or filing a lawsuit and i know judge rosenbaum you filed you filed a concurring opinion and a case on this issue as to civil lawsuits and said it's not always required then but here with the full panoply of different types of harassment over the course of five years there obviously is no requirement for probable cause thank you very much all right thank you counsel and mr kula you've reserved three minutes you question was asked what was he doing in the elevator we don't know that's why we needed that follow-up inquiry but again that i mean the only reason that it would be relevant would be to show us something about whether the jury was biased right i mean if there's some other reason that it would be relevant to the question about whether there was a problem with the jury i need you to explain that to me and if there isn't then i need you to explain how it is that that bears on whether or not the jury was prejudiced for the judge to be able to evaluate the juror's testimony the answer to that inquiry the judge had to have a full 360 understanding of the situation we cite to the u.s versus kanani case in our our reply brief at page 10 and in that case this court instructed that a juror's testimony that extrinsic information was harmless is not controlling the district courts this court held must also consider other factors such as the nature of the extrinsic evidence and the strength of the evidence properly presented by the plaintiffs against the defendant but the point that i'm understanding that for is is simply that we don't open and shut the case or our review based on whether or not the district court thought it was harmless we have to look at everything else but it doesn't mean but that doesn't tell us how what mr bush was doing in the elevator what his motivation was somehow reflects on whether or not it affected the jury and that's the part that i'm missing and and that presumption of prejudice that inherent inherent invasion of the province of the jury with this extrinsic force is essential to analyzing whether or not there was an influence on the juror you cannot analyze the influence on the juror without understanding what that influencer was bringing to the picture i guess you're 20 stakeholder i'm i'm with judge rosenbaum i still don't hear the answer to her question of why is what mr bush did relevant the district court judge had a 360 degree view from the perspective of the jury and we understand the perspective of the jury and how it perceived this contact is extraordinarily relevant why do we care suppose mr bush had been plotting for two months that he is going to you know run into a juror at the elevator and he's going to do all manner of things what we know is exactly what happened in that incident and how it affected the jury what does it matter what mr bush intended or planned or any of this anything of the sort it goes into the analysis it goes into the formulation of the curative instruction it goes into whether or not we're going to allow a party to champion their misconduct to the detriment of the opposing party my time is up respect for the request the court reverse and remand either for a new trial or for judgment in favor of mr corio under the color of law and probable cause arguments and other arguments made in the briefs thank you all right thank you very much counsel